IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA

NICOLE RULLI, individually and on )
behalf of her minor son, A.F.; CHARLES )
BRYANT JR.; SIMON PHILLIPS; )
DONOVAN HAYDEN; JENNIFER )
"JAY" YODER; DONOVANHAYDEN, )     Case No.  2:20-cv-965
and CHRISTOPHER WILSON JURING, )
individually and on  behalf  of all persons )
similarly situated, )
                              v. )
CITY OF PITTSBURGH; WILLIAM )
PEDUTO, individually and in his official )
capacity as Mayor of the City of )
Pittsburgh; WENDELL HISSRICH, )
individually and in his official capacity as )
Director of Public Safety for the City of )
Pittsburgh; SCOTT SCHUBERT, )
individually and in his official capacity as )
Chief of  the  Pittsburgh Bureau of Police; )
STEPHEN VINANSKY, Commander of )     **JURY TRIAL DEMANDED**
Zone 5 of the Pittsburgh Bureau of Police, )
in his individual capacity, JASON )
LANDO, Commander of Narcotics and )
Vice for the Pittsburgh Bureau of Police, )
in his individual capacity, JOHN DOE, )
Tactical Commander, in his individual )
capacity,

## DEFENDANTS HISSRICH, SCHUBERT, VINANSKY, LANDO AND THE CITY OF PITTSBURGH'S ANSWER AND AFFIRMATIVE DEFENSES IN REPONSE TO PLAINTIFF'S COMPLAINT IN CIVIL ACTION

Defendants Wendell Hissrich, Scott Schubert, Stephen Vinansky, Jason Lando and the City of Pittsburgh, (collectively "Answering Defendants") respectfully submit the following *Answer and Affirmative Defenses to Plaintiffs' Complaint.* The following numbered paragraphs correspond to the numbered allegations in Plaintiffs' Complaint. ECF No. 1-2.

   I)      INTRODUCTION

   1.      Following the murder of George Floyd, a Black man, by Minneapolis,

MN  police officers on May 25, 2020, a wave of sustained, large-scale demonstrations

against  racism and racialized police violence swept across the United States and spread

throughout many parts of the world. Protesters expressed their outrage and called for

justice not only for George Floyd's murder, but also for Breonna Taylor, Tony McDade,

and numerous other Black people, indigenous people, and people of color killed by police in the United States. Protesters have also called for changes to address systemic racism and reshape the way matters of public safety are addressed in this country and in their communities.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit that George Floyd, a black man was killed by police officers in Minneapolis, MN on or about May 25, 2020. The determination of whether Mr. Floyd's killing legally constitutes murder and the specific reasons of each alleged protestor across the United States are unknown to Answering Defendants, and thus, Answering Defendants deny the remaining allegations in this Paragraph and demand strict proof at trial. Furthermore, Answering Defendants deny any and all allegations of fact not expressly admitted in this Answer.**

2.     On June 1, 2020, people from Pittsburgh and surrounding communities assembled in the East Liberty neighborhood of the City of Pittsburgh to add their voices to these nationwide protests and seek change locally. The Pittsburgh Bureau of Police ("PBP") responded by escalating a peaceful protest into a scene of pandemonium, panic, violence and bloodshed. The PBP deployed hundreds of officers to counter approximately 150 protesters. As the assembled protesters held their hands in the air and chanted, "This is not a riot," and "Hands up – Don't shoot," PBP ordered its officers to attack them with explosives, chemical agents and ammunition which is known to seriously wound and sometimes kill its targets. PBP officers drove ambulances past injured protesters without stopping. After ordering peaceful protesters to leave the area, PBP officers blocked their escape with chemical gas, riot police and mounted patrols. PBP then arrested several protestors for failing to disperse, subjecting them to confinement in the midst of a global COVID-19 pandemic. The PBP ordered tactical officers dressed in paramilitary garb to patrol a residential neighborhood in armored vehicles and arbitrarily throw canisters of chemical gas at and/or arrest anyone they encountered.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit only to the extent that there were demonstrations on**

June 1, 2020, in the City of Pittsburgh, that Pittsburgh Bureau of Police (PBP) officers were present at the demonstrations. Answering Defendants admit that PBP officers gave repeated, legal orders to those that were unlawfully assembled to disperse. Answering Defendants further admit that some protestors chanted expressions like, "This is not a riot," and "Hands up – Don't shoot," however, it is denied that those statements reflected the actions of those shouting.

Answering Defendants further deny that PBP officers "excalat[ed] a peaceful protest into a scene of pandemonium, panic, violence and bloodshed." Answering Defendants deny that "PBP ordered its officers to attack them with explosives, chemical agents and ammunition." Answering Defendants further deny that any PBP officers drove ambulances or that "PBP officers drove ambulances past injured protesters without stopping." Answering Defendants also deny that PBP officers intentionally "blocked [assemblees] escape with chemical gas, riot police and mounted patrols" when and if those assembeled were leaving pursuant to the orders to disperse. Answering Defendants deny that "PBP ordered tactical officers dressed in paramilitary garb to patrol a residential neighborhood in armored vehicles and arbitrarily throw canisters of chemical gas at and/or arrest anyone they encountered." For all of the denied allegations in this paragraph Answering Defendants demand strict proof thereof at trial.

The remaining allegations in this paragraph are unknown to Answering Defendants, and thus, Answering Defendants deny the remaining allegations in this Paragraph and demand strict proof at trial. Furthermore, Answering Defendants deny any and all allegations of fact not expressly admitted in this Answer.

3.          Plaintiffs assembled in East Liberty to protest the routine covering up of police misconduct and abuse. In response, City of Pittsburgh officials, including the Mayor, Public Safety Director and Chief of Police, disseminated flagrant lies to conceal and/or justify the PBP's shameless use of force against peaceful protesters. These officials accused protesters of hurling rocks and "volleys of bricks" at PBP officers, and vehemently denied using chemical agents. Numerous videos demonstrate that these statements were patently false.

**DEFENDANTS' ANSWER:**

**Answering Defendants do not have information or knowledge regarding the reasons why individual Plaintiffs allegedly assembled in East Liberty, and thus, the allegations based on Plaintiffs individual intentions are denied and strict proof thereof is demanded at trial. Answering Defendants expressly denied that any Defendant "disseminated flagrant lies" or made statements that were "patently false". Answering Defendants further deny that the PBP used "shameless" force against alleged "peaceful protestors." Answering Defendants demand strict proof thereof at trial.**

4.      Plaintiffs are peaceful protesters who were subjected to police violence while protesting police violence.

**<u>DEFENDANTS' ANSWER</u>:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations that they were assembled as "peaceful protestors," and thus, the same is denied and strict proof thereof is demanded at trial. Answering Defendants deny that peaceful protestors were subjected to "police violence," and thus, the allegation is denied and strict proof thereof is demanded at trial.**

- Nicole Rulli and Charles Bryant brought Ms. Rulli's thirteen-year-old son, A.F., to the protest to teach him about his First Amendment rights. The police gassed his family and taught him to fear political protests.
  - **<u>DEFENDANTS' ANSWER</u>:**
  **Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations relating to the reasons why Plaintiff's Rulli and Bryant would bring their juvenile child to a demonstration and stay after the organizers ended the organized demonstration or how Plaintiff A.F. feels about political protests, and thus, these allegations are denied and strict proof thereof is demanded at trial. Defendants deny as stated the allegation that "The police gassed his family" and demand strict proof thereof at trial.**

- Simon Phillips is a dance instructor who attended the protest for "the chance to congregate with others" and express his "feelings of grief, frustration, and desperation for the Black community." He was arrested near his East Liberty apartment after he complied with the PBP's order to leave.
  - **<u>DEFENDANTS' ANSWER</u>:**
  **Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations relating to Plaintiff Phillips' occupation, the reasons he attended the alleged protest, and the distance between Plaintiff Phillips' residence and the location of his alleged arrest, and thus, these allegations are denied. Strict proof thereof is demanded at trial. Answering Defendants deny that Plaintiff Phillip was arrested after it was clear that he complied strict proof**

thereof is demanded at trial.

- Donovan Hayden does public service work for a local non-profit. He attended the protest to oppose the "degrading, reckless and racist policing" which he and other Black people experience on a daily basis. PBP officers gassed him chased him a gunpoint as he left the protest.
  - **DEFENDANTS' ANSWER:**

    **Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial. Defendants deny that any individuals were individually gassed and chased at gunpoint as stated in this paragraph.**

- Jennifer "Jay" Yoder has a background in social justice and is a trained peacemaker. Yoder attended the protest to support the movement and aid other protesters. Police gassed and pushed Yoder [Plaintiff Yoder uses pronouns They/Them] and arrested them as they attempted to return to their car after the protest.
  - **DEFENDANTS' ANSWER:**

    **Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial. It is denied that Plaintiff Yoder was arrested as they attempted to leave the assembly.**

- Christopher Wilson Juring is a food service worker. He attended to protest violence and racism and to show support for the African American community. PBP shot him in the back as he fled a cloud of tear gas and smoke.
  - **DEFENDANTS' ANSWER:**

    **Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

5.      Plaintiffs bring this class action on behalf of themselves and others similarly situated. Plaintiffs allege that the Defendants' conduct violated their First Amendment rights to freedom of speech and assembly, their Fourth Amendment rights to be free from excessive force and false arrest and their Fourteenth Amendment right not to be subject to official governmental policies which violate their constitutional rights.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

II)   <u>PARTIES</u>

6.      Plaintiff Nicole Rulli is an adult resident of the City of Pittsburgh, County of  Allegheny, Commonwealth of Pennsylvania. She files this lawsuit on her own behalf and on behalf of her minor son A.F.

**<u>DEFENDANTS' ANSWER:</u>**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

7.      Plaintiff Charles Bryant, Jr. is an adult resident of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

**<u>DEFENDANTS' ANSWER:</u>**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

8.      Plaintiff Simon Phillips is an adult resident of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

**<u>DEFENDANTS' ANSWER:</u>**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

9.      Plaintiff Jennifer "Jay" Yoder is an adult resident of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

**<u>DEFENDANTS' ANSWER:</u>**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

10.      Plaintiff Donovan Hayden is an adult resident of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

**<u>DEFENDANTS' ANSWER:</u>**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

11.     Plaintiff Christopher Wilson Juring is an adult resident of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

12.     Defendant City of Pittsburgh is a municipality within the Commonwealth of Pennsylvania with a principal place of business located at 414 Grant Street, Pittsburgh, Pennsylvania 15219. At all times relevant hereto, this Defendant was authorized to and did operate and maintain the Pittsburgh Bureau of Police ("PBP"). At all relevant times this Defendant acted by and through its duly authorized agents, employees and/or assigns, who were then and there acting within the course and scope of their employment, under the color of state law and in accordance with the customs, policies and practices of the City of Pittsburgh.

**DEFENDANTS' ANSWER:**

**The averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial.**

13.     Defendant William Peduto is the Mayor of the City of Pittsburgh.  At all times relevant, Peduto was the chief policymaker of Defendant City of Pittsburgh. At all times relevant, Peduto ordered, authorized and/or acquiesced in the violations of Plaintiffs' rights as alleged herein. At all times relevant, Peduto was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Peduto is sued in his official and individual capacities.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations of this paragraph only to the extent that it is admitted that Defendant William Peduto[1] was the Mayor of the City of**

---

[1] Defendant William Peduto is not included as an "Answering Defendant" in the instant fling

Pittsburgh at the time of the alleged events on June 1, 2020. The further averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial. Answering Defendants strictly deny that any Plaintiffs' alleged constitutional rights were violated.

14.     Defendant Wendell Hissrich is the Director of the City of Pittsburgh Department of Public Safety. Hissrich is the chief policymaker for the City of Pittsburgh Department of Public Safety. At all times relevant, Hissrich ordered, authorized, participated in and/or acquiesced in the violations of Plaintiffs' rights as alleged herein. At all times relevant, Hissrich was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Hissrich is sued in his official and individual capacities.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations of this paragraph only to the extent that it is admitted that Defendant Hissirch was the Director of Public Safety at the time of the alleged events on June 1, 2020. The further averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial. Defendants strictly deny that any Plaintiffs' alleged constitutional rights were violated.**

15.     Defendant Scott Schubert is the Chief of the Pittsburgh Bureau of Police. At all times relevant, Schubert was a policymaker of Defendant City of Pittsburgh. At all times relevant, Schubert ordered, authorized, participated in and/or acquiesced in the violations of Plaintiffs' rights as alleged herein. At all times relevant, Schubert was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Schubert is sued in his official and individual capacities.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations of this paragraph only to the extent that it is admitted that Defendant Schubert was the Chief of Police for the PBP at the time of the alleged events on June 1, 2020. The further averments set forth in this**

paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial. Answering Defendants strictly deny that any Plaintiffs' alleged constitutional rights were violated.

16.     Defendant Stephen Vinansky is the Commander of Zone 5 of the Pittsburgh Bureau of Police. At all times relevant, Vinansky ordered, authorized, participated in, and/or acquiesced in the violations of Plaintiffs' rights as alleged herein. At all times relevant, Vinansky was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Vinask[y] is sued in his individual capacity.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations of this paragraph only to the extent that it is admitted that Defendant Vinansky was the Commander of PBP Zone 5 at the time of the alleged events on June 1, 2020. The further averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial. Answering Defendants strictly deny that any Plaintiffs' alleged constitutional rights were violated.**

17.     Defendant Jason Lando is the Commander of Narcotics and Vice for the Pittsburgh Bureau of Police. At all times relevant, Lando ordered, authorized, participated in, and/or acquiesced in the violations of Plaintiffs' rights as alleged herein. At all times relevant, Lando was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Lando is sued in his individual capacity.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations of this paragraph only to the extent that it is admitted that Defendant Lando was the Commander of the Narcotics and Vice Division of the PBP at the time of the alleged events on June 1, 2020. The further averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial. Answering Defendants strictly deny that any Plaintiffs' alleged constitutional rights were**

violated.

18.     Defendant John Doe was the Tactical Commander of Pittsburgh Bureau of Police Special Weapons and Tactics (SWAT) Unit during the events described herein.  At all times relevant, Doe ordered, authorized, participated in, and/or acquiesced in the violations of Plaintiffs' rights as alleged herein. At all times relevant, Doe was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Doe is sued in his individual capacity.

**DEFENDANTS' ANSWER:**
**The allegations of this paragraph are directed at a Defendant other than one of the Answering Defendants, and thus, no answer is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial.**

III)     JURISDICTION

19.     The jurisdiction of this Court is invoked pursuant to 28 USC §§ 451, 1331, 1343 and 1345, and upon the doctrine of pendant and/or supplemental jurisdiction over any state law claims.

**DEFENDANTS' ANSWER:**
**The averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial.**

20.     Venue is proper in this Court because the events described herein occurred in the Western District of Pennsylvania.

**DEFENDANTS' ANSWER:**
**The averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial.**

IV)     FACTS

a.     *City Officials were on notice that the PBP could and would indiscriminately use excessive force against peaceful protesters.*

**DEFENDANTS' ANSWER: The allegations in this paragraph are denied and strict**

proof thereof is demanded at trial.

21.     On May 25, 2020 Minneapolis police officers murdered George Floyd, an African-American man, by kneeling on his neck and back until he suffocated. Video of the murder sparked public outrage and weeks of protests against racism and police violence throughout the United States that continue as of the filing of this Complaint.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit that George Floyd, a black man was killed by police officers in Minneapolis, MN on or about May 25, 2020. The determination of whether Mr. Floyd's killing legally constitutes murder and the specific reasons of each alleged protestor across the United States are unknown to Answering Defendants, and thus, Answering Defendants deny the remaining allegations in this Paragraph and demand strict proof at trial. Furthermore, Answering Defendants deny any and all allegations of fact not expressly admitted in this Answer.**

22.     Numerous protests took place in and around Pittsburgh, Pennsylvania.

**DEFENDANTS' ANSWER:**

**The allegations in this paragraph are too vague and ambiguous to permit response, thus the same are denied and strict proof thereof is demanded at trial. By way of further answer, there were demonstrations and protests following George Floyd's death in the City of Pittsburgh.**

23.     On Saturday, May 30, 2020 thousands of concerned residents of the City of Pittsburgh and surrounding areas gathered in Pittsburgh's Downtown area to protest police racism and violence. The vast majority of the attendees did not engage in any property damage or violence. However, following some reports of property damage, PBP officers used chemical gas, rubber bullets and other projectiles, pepper spray, flashbang grenades and other riot control agents indiscriminately against everyone present, including peaceful protesters and nonviolent bystanders. Numerous protesters were seriously injured. The PBP arrested 46 people at the protests for "failure to disperse." The Allegheny County District Attorney refused to pursue charges against at least 39 of these arrestees because the PBP's evidence was insufficient to support the charges.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to respond to the truthfulness of Plaintiffs' allegations relating to the reasons why each individual gathered to protest, the exact amount of individuals who appeared to protest or the**

locations of demonstrations outside the City of Pittsburgh, and thus, the same are denied. Answering Defendants also lack information or knowledge regarding the cause or severity of the alleged injuries to individuals present at demonstrations after the demonstrations were declared to be an unlawful assembly due to property damage as admitted in this Complaint.

Answering Defendants admit there was dangerous and significant property damage on May 30, 2020. While Plaintiffs admit to some property damage they fail to describe the full extent of vandalism which includes a crowd member setting fire to a police car, protestors hitting police horses, assault of a news camera man, officers injured by projectiles, and extensive property damage.

Answering Defendants deny using "chemical gas, rubber bullets and other projectiles, pepper spray, flashbang grenades and other riot control agents indiscriminately against everyone present, including peaceful protesters and nonviolent bystanders." Strict proof thereof is demanded at trial. Answering Defendants deny any other factual allegations set forth in this paragraph and demand strict proof thereof at trial.

24.     As a result of the PBP's actions on May 30, 2020, Defendants Peduto, Hissrich and Schubert were on notice that PBP officers would use overwhelming and excessive force against peaceful protesters with little or no provocation.

**DEFENDANTS' ANSWER:**

Denied. Answering Defendants further specifically deny that any individuals alleged constitutional rights were violated on May 30, 2020, or that PBP officers used unreasonable "overwhelming or excessive force against peaceful protestors with little or no provocation." Strict proof thereof is demanded at trial.

25.     As a result of the PBP's actions on May 30, 2020, Defendants Peduto, Hissrich and Schubert were on notice that PBP officers would arrest and jail peaceful protesters with little or no evidence to support criminal charges.

**DEFENDANTS' ANSWER:**

Denied.

26.     Defendants Peduto, Hissrich and Schubert supported the PBP actions.

**DEFENDANTS' ANSWER:**

Answering Defendants admit the allegations in this paragraph to the extent that PBP actions during the alleged incident were reasonable and permitted under the constitution. Answering Defendants deny that they supported any alleged

unreasonable or excessive force or other actions that allegedly constituted a constitutional injury.

27.     Defendants Peduto, Hissrich and Schubert made no effort to ensure that such indiscriminate use of force did not occur at future protests.

**DEFENDANTS' ANSWER:**

**Denied. By way of further answer, Answering Defendants did not know of or believe there were any alleged constitutional violations during the incidents described in Plaintiffs' Complaint.**

> b.  *PBP used excessive force against peaceful protesters on June 1, 2020*
> **DEFENDANTS' ANSWER:**
> **Denied.**

28.     On June 1, 2020 thousands of concerned Pittsburgh residents again gathered to protest police racism and violence, this time in the East Liberty neighborhood of the City of Pittsburgh.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations of this paragraph only to the extent that there was a large political and/or social demonstration in the East Liberty area of the City of Pittsburgh on June 1, 2020. Answering Defendants are without knowledge or information to form belief as to the individual intentions and purpose of each person attending the demonstration and thus, the same is denied and strict proof thereof is demanded at trial.**

29.     Plaintiffs were among those protesters who gathered in East Liberty on June 1, 2020.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial. By way of further answer, each of the named Plaintiffs admits in Plaintiffs' Complaint to hearing PBP commands to leave the area because the demonstration had turned into an unlawful assembly. Plaintiffs further admit to knowing of property damage, and thus, Plaintiffs admit, at least, to committing the offense of failure to disperse.**

30.     Plaintiff Nicole Rulli attended the protest with her fiancé Plaintiff Charles Bryant, Jr. and her thirteen-year-old son, A.F. (collectively "Rulli family"). Rulli is

Caucasian, Bryant is African-American and A.F. is biracial. Bryant wrote of his decision to attend the protest: "Attending the protest on June 1st was the most patriotic act of my life. I was exercising my 1st amendment rights." Rulli and Bryant brought A.F. to the protest because they wanted to expose him to a peaceful political protest and teach him about his constitutional rights.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

31. Plaintiff Simon Phillips is a dance instructor. He is African American. Phillips wrote that he attended the protest for "the chance to congregate with others" and express his "feelings of grief, frustration, and desperation for the Black community."

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

32. Plaintiff Donovan Hayden works for a local arts non-profit. Hayden wrote of his reasons for joining the protest: "The recent killings of Ahmaud Arbery, Breonna Taylor, and George Floyd, reignited the anger that I share with many black people. The anger that comes from being victims to degrading, reckless, and racist policing. I channeled and expressed that anger through protesting on June 1st. I marched, sang, and listened with others to mourn the lives lost and challenge the systems killing us."

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

33. Plaintiff Christoper Wilson Juring works in the food service industry. He participated in the protest in order to exercise his First Amendment rights. Juring wrote the following regarding his reasons for protesting: "On Monday, June 1st, 2020 I attended

the Black Lives Matter protest in East Liberty to give my support to the fight against police brutality and systemic racism. I feel that participating in such protests is a necessary step in demanding change. As a white person, I wanted to use my privilege and my voice when so many people can't even walk down the street without fearing for their lives."

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

34.    Plaintiff Jennifer "Jay" Yoder works for a non-profit that supports survivors of sexual violence. Yoder is a trained international human rights observer and peacemaker and has observed and participated in protests involving international conflict. Jay was at the protest to support racial justice and oppose police brutality, as well to observe police conduct and assist protestors.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations in this paragraph, and thus, the allegations are denied and strict proof thereof is demanded at trial.**

35.    The protesters marched peacefully in the streets in the vicinity of Penn Avenue and Centre Avenue from approximately 3:30 pm until approximately 6:30 pm.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations in this paragraph.**

36.    Historically, Defendants Peduto, Hissrich, Schubert and City of Pittsburgh have permitted, approved and/or encouraged similar protests in Pittsburgh streets.

**DEFENDANTS' ANSWER:**

**Answering Defendants, Hissrich, Schubert, Vinansky, and Lando admit the allegations in this paragraph to the extent that individuals who want to organize a demonstration are required to get permits and in many situations, even when demonstrators or protestors do not have proper permits, Answering Defendants take precautions to ensure the safety of those involved in organized demonstrations and**

protests. However, when an organize protest or demonstration ends with property damage and the threat of injury the situation becomes an unlawful assembly.

37.     Uniformed Pittsburgh Bureau of Police (PBP) officers approved and/or encouraged the protesters' activities by, *inter alia*, marching with them, communicating with organizers, blocking off streets and redirecting traffic.

**DEFENDANTS' ANSWER:**

**Answering Defendants, Hissrich, Schubert, Vinansky, and Lando admit the allegations in this paragraph to the extent that individuals who want to organize a demonstration are required to get permits and in many situations, even when demonstrators or protestors do not have proper permits, Answering Defendants take precautions to ensure the safety of those involved in organized demonstrations and protests. However, when an organize protest or demonstration ends with property damage and the threat of injury the situation becomes an unlawful assembly.**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations that any alleged demonstrator or protestor was "encouraged" by the PBP's cooperation with protestor organizers, and thus, the same are denied and strict proof thereof is demanded at trial.**

38.     By attending, approving, encouraging, and assisting the protesters activities, Defendants communicated to them that they were exercising their First Amendment rights in a time, place and manner that Defendants considered reasonable.

**DEFENDANTS' ANSWER:**

**The averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial.**

**Answering Defendants are without knowledge or information to form belief as to the truth of Plaintiffs' allegations that any alleged demonstrator believed the PBP was "communicating" with individual attendees, and thus, the same are denied and strict proof thereof is demanded at trial.**

39.     At approximately 6:30 pm, the protesters congregated at the Target store located at the Corner of Penn Avenue and Centre Avenue. Many either remained at that location or left the area.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the many individuals left the location because the**

organizers had ended the demonstration or protest. **Answering Defendants lack information or believe as to who Plaintiffs specifically refer to as "Protestors" at this point as the organized protest had officially ended, and thus, the same is denied and strict proof thereof is demanded at trial.**

40.     Between 6:30 pm and 7:00 pm, a much smaller group of 100 to 150 protesters continued to march down Centre Avenue toward Negley Avenue (hereinafter "Protesters").

**DEFENDANTS' ANSWER:**

**Answering Defendants lack information or believe as to who Plaintiffs specifically refer to as "Protestors" at this point as the organized protest had officially ended, and thus, the same is denied and strict proof thereof is demanded at trial.**

41.     The Protesters marched peacefully down Centre Avenue for over half a mile.

**DEFENDANTS' ANSWER:**

**Answering Defendants lack information or believe as to who Plaintiffs specifically refer to as "Protestors" at this point as the organized protest had officially ended, and thus, the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

42.     Although Defendant Peduto had implemented a curfew for the City of Pittsburgh, this curfew would not go into effect until 8:30 pm, nearly two hours later.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations in this paragraph only to the extent that there was an 8:30pm curfew. Answering Defendants lack information or knowledge to determine the truthfulness of Plaintiffs allegations as to the timing of their factual time line in regard to the 8:30 curfew, and thus, the same are denied and strict proof thereof is demanded at trial.**

43.     As the Protesters marched, approximately 50 to 100 PBP officers formed a line across Centre Avenue at Negley Avenue, blocking the Protesters' path.

**DEFENDANTS' ANSWER:**

**Answering Defendants lack information and knowledge to determine the truthfulness of who the individuals being called "protesters" were, what the intentions of those individuals, and whether any of the named Plaintiffs were in this alleged group of people. Thus, the same are denied and strict proof thereof is demanded at trial.**

**Answering Defendants admit that PBP officers blocked off a main intersection/ thoroughfare in the area of the intersection of Center and Negley Avenues. Any other factual allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

44.     The officers wore helmets, face shields and gas masks. Every officer held either a baton or a firearm.

**DEFENDANTS' ANSWER:**

**Admitted. By way of further answer not every PBP officer was wearing a face mask and PBP officers regularly carry service issued firearms and batons.**

45.     Additional officers were dressed in military gear including camouflage, helmets and gas masks. These officers carried firearms and other tactical gear. Some had police dogs. On information and belief, these officers were members of the PBP Special Weapons and Tactics ("SWAT") Team.

**DEFENDANTS' ANSWER:**

**Denied as stated. By way of further answer, PBP officers from special units, like K9 officers were present. However, it is unclear what "other tactical gear" Plaintiffs refer to, and thus, Answering Defendants do not have information or knowledge to determine the truthfulness of the allegations in this paragraph. The same are denied and strict proof thereof is demanded at trial.**

46.     At about the same time as the above described PBP officers blocked the Protesters' path on Centre Avenue, other PBP officers and/or law enforcement officers acting under the direction of PBP, formed similar lines across other East Liberty streets.

**DEFENDANTS' ANSWER:**

**Denied as stated. Plaintiffs' claims intentionally skew timeline of factual events. After numerous warnings regarding potential arrests due to an unlawful assembly. PBP and other officers made arrest of individuals who failed to comply with repeated and prolonged orders near other parts of Center Avenue.**

47.     The Protesters stopped on Centre Avenue approximately 30 feet from the line of police officers.

**DEFENDANTS' ANSWER:**

**Answering Defendants lack information and knowledge to determine the truthfulness**

**of who the individuals being called "protesters" were, what the intentions of those individuals, and whether any of the named Plaintiffs were in this alleged group of people. Answering Defendants also lack information and knowledge as to the exact locations and distances Plaintiffs claims refer to, and thus, the same are denied and strict proof thereof is demanded at trial.**

48.     The Protesters were peaceful.

**DEFENDANTS' ANSWER:**

**Denied.**

49.     The Protesters' behavior was not materially different from the behavior of the larger group of protesters earlier in the day, which the PBP openly approved and supported.

**DEFENDANTS' ANSWER:**

**Denied.**

50.     Groups of Protesters chanted, "Hands up - Don't Shoot," "This is not a riot," "Join us," and similar phrases. Some Protesters knelt on the ground with their hands in the air. Link to Video 1; Link to Video 2

**DEFENDANTS' ANSWER:**

**Answering Defendants lack information and knowledge to determine the truthfulness of who the individuals being called "protesters" were, the intentions of those individuals, and whether any of the named Plaintiffs were in this alleged group of people. Answering Defendants deny that the alleged protestors' actions reflected the alleged protestors' actions. Answering Defendants also lack information and knowledge as to the truthfulness of whether the videos submitted to support these claims accurately reflect the claims, and thus, Answering Defendants deny and strict proof thereof is demanded at trial.**

51.     The Protesters did not damage public or private property.

**DEFENDANTS' ANSWER:**

**Denied.**

52.     The Protesters did not throw bricks or rocks at the PBP officers.

**DEFENDANTS' ANSWER:**

**Denied.**

53.     The Protesters did not engage in any activity that could have given rise to

a reasonable belief that they were likely to cause substantial harm or serious inconvenience, annoyance or alarm.

**DEFENDANTS' ANSWER:**

**Denied.**

54.     The Protesters did not present an imminent threat to public safety, peace or order;

**DEFENDANTS' ANSWER:**

**Denied.**

55.     Nevertheless, on information and belief, Defendant Doe and/or other individually named Defendants made the decision to declare the Protesters' assembly unlawful and order the Protesters to disperse.

**DEFENDANTS' ANSWER:**

**Denied as stated[2]. When PBP ordered the individuals to disperse the gathering was an unlawful assembly.**

56.     Defendants' Peduto, Hissrich and Schubert were either present during the above-described events or were otherwise aware of them as they occurred.  These three defendants either made the decision to declare the assembly unlawful, or approved of that decision and the basis for that decision.

**DEFENDANTS' ANSWER:**

**Denied as stated. Answering Defendants deny that declaring an unlawful assembly was unreasonable or violated any alleged constitutional right.**

57.     At approximately 7:17 pm, a PBP officer (possibly Defendant Doe) made the following announcement (hereinafter "unlawful assembly announcement"):

> I am Officer [unintelligible] of the Pittsburgh Police. I hereby declare this to be an unlawful assembly. I order all those assembled at this location to immediately disperse. You must  leave this immediate vicinity.  If you remain in this vicinity you are in violation of the Pennsylvania crimes code. No matter what your purpose is you must leave. If you do not disperse you will be arrested and/or subject to other police action. Other police action may include actual physical removal, the  use of riot control agents and/or less lethal munitions which could cause the risk of injury for those who remain.  You must  immediately leave  outbound on Centre Avenue. [Unintelligible]

---

[2] Defendant John Doe is not included as an Answering Defendant in this filing and is not a party currently identified or represented.

**DEFENDANTS' ANSWER:**

**Denied as stated. There were multiple, audible announcements regarding the lawful command to disperse. The text, except for the portion regarding an officer's name being "unintelligible," is an accurate depiction of the repeated announcements given to the individuals illegally assembled in the evening on June 1, 2020, after the organized protest was concluded.**

58.     At that time, Centre Avenue outbound was blocked by numerous police vehicles and/or riot control officers;

**DEFENDANTS' ANSWER:**

**Denied as stated. By way of further answer arrests were made near other locations of Center Avenue after individuals refused to disperse despite hearing, as Plaintiffs admit they heard, multiple lawful commands to disperse.**

59.     Shortly after the first "unlawful assembly announcement" was made, PBP deployed a Long Range Acoustic Device ("LRAD") against the Protesters. A LRAD is military-grade weapon that emits a "deterrent tone" so loud it can cause permanent hearing loss.

**DEFENDANTS' ANSWER:**

**Denied as stated. It is admitted that the PBP used a hand-held amplification device, not a weapon, to assure that those gathered could hear the orders to disperse. The equipment was used in a reasonable manner. It is denied any deterrent tone was emitted.**

60.     Police warned the Protesters not to "advance" on their line. However, nearly all of the Protesters were at least 30 feet away from the officers. At no time did any Protester "advance" on the officers.

**DEFENDANTS' ANSWER:**

**Denied as stated. Multiple individuals refused to follow numerous lawful orders, including lawful orders to stop advancing into intersections and towards police.**

61.     The PBP officer made more "unlawful assembly announcements" over the next several minutes and continued to deploy the LRAD.

**DEFENDANTS' ANSWER:**

**Admitted.**

62.     An unknown PBP officer discharged a firearm into the crowd hitting a Protester in the knee. Other Protesters dragged the injured Protester to the sidewalk and

offered him assistance.  Link to Video.

**DEFENDANTS' ANSWER:**

**Denied as stated. Officers deployed less lethal munitions in necessary response to actions of rioting protestors.  It is further denied that the above video cited accurately depicts the allegations in this paragraph, and thus, the same is denied and strict proof thereof is demanded at trial.**

63.     Despite this aggressive action by the PBP, the Protesters remained peaceful. They continued chanting but did not disperse. The Protesters did not throw rocks, bricks or bottles. The Protesters did not destroy property or commit acts of violence or vandalism. The Protesters did not advance on the police. Link to Video 1. Link to Video 2.

**DEFENDANTS' ANSWER:**

**Denied.**

64.     Despite the lack of any destruction, property damage or violent behavior by the Protesters, on information and belief, Defendant Doe ordered the PBP officers to use force against the Protesters.

**DEFENDANTS' ANSWER:**

**This paragraph is directed at a Defendant other than the Answering Defendants, and thus, no answer is required. To the extent that the Court deems and answer is required the same is denied and strict proof thereof is demanded at trial.**

65.     The PBP and Defendants made no attempt to communicate to the Protesters why the assembly was declared unlawful.

**DEFENDANTS' ANSWER:**

**Denied as stated. PBP officers gave numerous warnings regarding the assembly being declared an unlawful assembly. The circumstances of why the assembly was unlawful were open and obvious.**

66.     The PBP and Defendants made no attempt to communicate to the Protesters why they were being ordered to disperse.

**DEFENDANTS' ANSWER:**

**Denied as stated. PBP officers gave numerous warnings regarding the assembly being declared an unlawful assembly. The circumstances of why the assembly was unlawful**

were open and obvious.

67.     In the middle of an unlawful assembly announcement, a PBP police officer

suddenly threw a "flashbang" grenade at the crowd.  Link to Video 1; Link to Video 2; Link

to Video 3.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the**
**truthfulness of Plaintiffs allegations as to whether the item described in this paragraph**
**and showed in the corresponding video was a "flashbang grenade" or whether the**
**videos support the full context of the circumstances officers were facing at the time the**
**alleged device was used. Thus, the allegations of this paragraph are denied and strict**
**proof thereof is demanded at trial.**

68.     A "flashbang" grenade is an explosive device designed to frighten and

disorient an enemy through a blinding flash of light and extremely loud explosive noise.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the**
**truthfulness of Plaintiffs allegations, and thus, the same are denied and strict proof**
**thereof is demanded at trial.**

69.     Immediately following the detonation of the flashbang grenade, PBP officers

began firing "rubber bullets," "beanbags rounds" and/or "sponge grenades" at the

Protesters.  Link to Video.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the**
**truthfulness of Plaintiffs allegations, and thus, the same are denied and strict proof**
**thereof is demanded at trial. It is unclear when the video cited to support the above**
**paragraph was taken, thus it is denied that the video supports the allegations of this**
**paragraph and strict proof thereof is demanded at trial.**

70.     "Rubber bullets" are large rubber coated metal cylinders which can be fired

from standard firearms or dedicated "riot guns." "Beanbag rounds" are cloth bags filled

with lead shot which are fired from a 12-gauge shotgun. "Sponge grenades" are large

plastic or metal bullets with dense foam rubber tips. They are typically fired from a 40mm

grenade launcher.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without knowledge or information to form belief as to the truthfulness of Plaintiffs allegations, and thus, the same are denied and strict proof thereof is demanded at trial. By way of further answer, PBP officers do not use "Rubber Bullets." Bean bag projectiles and sponges are utilized by the PBP and, if any were used, they were deployed in a reasonable and appropriate manner on June 1, 2020.**

71.     Although these items are often referred to as "less lethal" munitions, they are fired with the force of a gun or grenade launcher and have the capability to cause serious injury and/or death, particularly when fired at close range or when fired at vulnerable areas of the body.

**DEFENDANTS' ANSWER:**

**Admitted to the extent that injuries can occur and accordingly officers are well trained in the use of the above described munitions.**

72.     PBP officers also threw and/or shot canisters into the crowd, some of which emitted smoke ("smoke bombs") and some of which emitted chemical gas commonly referred to as "tear gas" ("chemical grenades.")

**DEFENDANTS' ANSWER:**

**Admitted to the extent that Answering Defendants are aware of smoke canisters being deployed. Answering Defendants are without information or knowledge as to how many, if any, chemical gas canisters were deployed**

73.     "Tear gas" generally refers to chemical agents that cause tearing, coughing, difficulty breathing, skin irritation and/or vomiting. Tear gas grenades can be thrown or fired from a grenade launcher.

**DEFENDANTS' ANSWER:**

**Admitted.**

74.     Tear gas can cause serious complications for people with respiratory problems. Exposure to tear gas increases susceptibility to COVID-19 infection and/or complications.

**DEFENDANTS' ANSWER:**

**Defendants are without information or knowledge to form an opinion as to the**

truthfulness of the allegations in this paragraph. Thus, the same are denied and strict proof thereof is demanded at trial.

75.     Numerous Protesters were injured by tear gas thrown into the crowd. Link to Video. Many Protesters were coughing, had tears streaming down their faces, and had difficulty breathing and seeing. The tear gas caused some Protesters to vomit.

**DEFENDANTS' ANSWER:**

**Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video submitted in support of these allegations accurately depict the above allegations. Thus, the same are denied and strict proof thereof is demanded at trial.**

76.     The explosions, gunfire, smoke and gas caused many of the Protesters to panic and run outbound on Centre Avenue and into nearby side streets. Link to Video.

**DEFENDANTS' ANSWER:**

**Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video submitted in support of these allegations accurately depict the above allegations. Thus, the same are denied and strict proof thereof is demanded at trial.**

77.     The PBP officers immediately began to march outbound on Centre Avenue, continuing to indiscriminately shoot rubber bullets, beanbag rounds and/or sponge grenades at the fleeing Protesters as they ran away. Link to Video.

**DEFENDANTS' ANSWER:**

**Answering Defendants admit the allegations in this paragraph to the extent that officers walked down Center Avenue. Answering Defendants deny knowledge that officers were shooting "indiscriminately" or that the video cited in support of this allegation**

78.      The smoke created from the PBP's smoke bombs and chemical gas grenades was so thick that the officers could not see what or who they were shooting.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video submitted in support of these allegations accurately depict the above allegations. Thus, the same are denied and strict proof thereof is demanded at trial.**

79.    Videos show PBP officers shooting blindly into smoke-filled Centre Avenue  as Protesters run away. Link to Video 1; Link to Video 2.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of whether the video submitted in support of these allegations accurately depict the above allegations. Thus, the same are denied and strict proof thereof is demanded at trial.**

80.    Numerous Protesters were hit with rubber bullets, bean bag rounds and sponge grenades. Some were seriously injured and required hospitalization.

**DEFENDANTS' ANSWER:**

**Answering Defendants deny any individual was hit with a rubber bullet. Answering Defendants are without information or knowledge as to the truthfulness of how many individuals were hit with any other munitions or were hospitalized on June 1, 2020, for reasons related to the munitions.**

81.    One Protester was hit in the face with an unknown munition and knocked unconscious. He suffered serious injuries and began bleeding profusely. Other Protesters dragged him out of the street and attempted to render medical aid.  Link to Video ; Link to Photograph. As they did so a SWAT officer threw a chemical grenade at them.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video submitted in support of these allegations accurately depict the above allegations. Thus, the same are denied and strict proof thereof is demanded at trial. Answering Defendants deny knowledge of any officer intentionally throwing a chemical grenade at an injured protestor, furthermore the video clearly contradicts this allegation. Strict proof of this claim is demanded at trial.**

82.    No ambulance arrived to treat or transport the protester, so other Protesters eventually drove him to the hospital where, on information and belief, he was treated for multiple facial fractures.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, or whether any of these**

depicted individuals called for an ambulance, and thus, the claims in this paragraph are denied and strict proof thereof is demanded at trial.

83.    The marching PBP officers were flanked on the sidewalks by PBP

SWAT officers who pointed their firearms at Protesters, shoved them and yelled at them.

Link to Video.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph and thus, the same are denied and strict proof thereof is demanded at trial.**

84.    As the PBP officers advanced, they continued to deploy chemical gas

grenades, sometimes throwing them at Protesters as they fled.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph and thus, the same are denied and strict proof thereof is demanded at trial.**

85.    PBP officers deployed oleoresin capsicum ("OC" or "pepper") spray

on  fleeing and/or peaceful Protesters.

**DEFENDANTS' ANSWER:**

**Denied.**

86.    Multiple video recordings from the scene show two Protesters in an alley as

the line of PBP officers approaches.The Protesters are on their knees with their hands  in

the air. An officer sprays an unknown substance, believed to be OC spray, into the

Protesters' faces multiple times from a distance of approximately five feet, causing them

to run. A SWAT officer then throws a canister, believed to be a chemical gas grenade, at

the fleeing Protesters as another officer shoots an unknown munition at them. Link to

Video 1; Link to Video 2.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph and thus, the same are denied and strict proof thereof is demanded at trial. By way of further answer, it is clear**

**from the video cited in the above paragraph that numerous individuals were located in an around the area of the two allegedly described above and that this video was taken after numerous lawful orders to disperse.**

87.   As the PBP officers advanced, they knowingly shot at peaceful Protesters from dangerously close range.

**DEFENDANTS' ANSWER:**

**Denied.**

88.   Multiple video recordings from the scene depict a line of officers advancing on three Protesters (two men and a woman).  The Protesters slowly walk backwards with their hands raised. A SWAT officer shoots the female protester in the chest with an unknown munition from a distance of approximately 10 feet. Link to Video 1 ; Link to Video 2.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of whether the allegations in this paragraph accurately describe the context of the above video and thus, the same are denied and strict proof thereof is demanded at trial.**

89.   The PBP used advancing lines of officers and chemical gas to cut off avenues of escape for fleeing Protesters. As a result, Protesters were forced to choose between approaching a line of officers or retreating into clouds of chemical gas.

**DEFENDANTS' ANSWER:**

**Denied.**

90.   PBP officers arrested trapped Protesters and falsely charged them with failure to disperse and disorderly conduct.

**DEFENDANTS' ANSWER:**

**Denied.**

91.   PBP officers shot and threw chemical gas canisters at trapped Protesters.

**DEFENDANTS' ANSWER:**

**Denied.**

92.   PBP officers continued to deploy chemical gas and other munitions on Protesters, bystanders and passers-by throughout East Liberty long after the Protesters had

dispersed and over a half mile away from where the Protesters had initially assembled.

Link to Video 1 ; Link to video 2  Link to Video 3;  Link to Video 4.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of whether the allegations in this paragraph accurately describe the context of the above videos and thus, the same are denied and strict proof thereof is demanded at trial.**

93.     PBP arrested and criminally charged 22 people on June 1 in relation to the protest.

**DEFENDANTS' ANSWER:**

**Admitted.**

94.     Despite a lack of probable cause for these arrests, the PBP transported the 22 arrestees to the Allegheny County Jail where they were confined for hours in close quarters, in an area known to cause an increased risk of contracting COVID-19.

**DEFENDANTS' ANSWER:**

**Denied. There was probable cause to arrest the individuals who were charged with crimes. Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the conditions at the Allegheny County Jail because they do not work for the Allegheny County Jail. Answering Defendants are without information or knowledge regarding the associated risks of COVID-19.**

95.     On June 18, the Allegheny County District Attorney's Office withdrew charges against all 22 people arrested and charged by PBP due to a lack of evidence.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

c.  *PBP prevented injured Protesters from receiving medical treatment*

**DEFENDANTS' ANSWER:**

**Denied**

96.     At all times relevant, at least one ambulance was at the scene and was escorted by an armored SWAT vehicle. This ambulance was not used to provide medical treatment or transportation to injured Protesters. On information and belief, this

ambulance was requested by the PBP and was reserved to treat PBP personnel

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

97.    On information and belief, the PBP made no effort to ensure that EMTs or other trained medical professionals were available to treat injured Protesters, despite knowing that the level of force they planned to use against Protesters was likely to cause serious injury or death.

**DEFENDANTS' ANSWER:**

**Denied.**

98.    On information and belief, PBP officers prevented EMTs from entering the area and treating injured Protesters.

**DEFENDANTS' ANSWER:**

**Denied.**

99.    Because the PBP did not ensure that EMTs were available to treat Protesters and/or prevented EMTs from treating Protesters, injured Protesters received medical assistance by untrained and unqualified individuals and were transported to the hospital in cars and pickup trucks.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

    d.  *Plaintiffs Nicole Rulli, Charles Bryant, Jr. and A.F. (the "Rulli family")*
    **DEFENDANTS' ANSWER:**

    **There are no allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

100.    The Rulli family left for the protest when Rulli got home from work. They  arrived at the corner of Centre Avenue and Penn Avenue at approximately 6:15.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

101.   The Rulli family joined the Protesters as they marched down Centre Avenue;

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

102.   The Rulli family did not participate in any vandalism, violence or destruction, nor did they witness any vandalism, violence or destruction before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

103.   The Rulli family did not throw any objects at PBP officers, nor did they witness anyone else throwing objects at PBP officers before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial. It is specifically denied that nothing was thrown at PBP officers on June 1, 2020. It is clear from the videos provided by Plaintiffs that numerous items were thrown at PBP officers on June 1, 2020.**

104.   The Rulli family did not disperse when ordered to do so because the Protesters were peaceful and they believed they had a First Amendment right to protest police misconduct in that place, at that time and in that manner.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial. It is specifically denied that the alleged**

**protesters were peaceful after and during the PBP lawful orders to disperse. It is further denied that any of the Answering Defendants violated any alleged constitutional right.**

105.    After the PBP officers began shooting at them and gassing them, the Rulli family ran outbound on Centre Avenue as directed by the unlawful assembly announcement.

**<u>DEFENDANTS' ANSWER:</u>**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

106.    The Rulli family found that Centre Avenue outbound was blocked by PBP police in riot gear. Link to Photograph.

**<u>DEFENDANTS' ANSWER:</u>**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**


107.    All of the side streets leading off of Centre Avenue were similarly blocked.
**<u>DEFENDANTS' ANSWER:</u>**

**Denied.**

108.    Unable to escape, the Rulli family ran to the top of a parking structure/shopping center along Centre Avenue at Beatty Street.

**<u>DEFENDANTS' ANSWER:</u>**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

109.    From the top of the parking garage they witnessed a Protester on a side street below who was bleeding profusely from the head. Several Protesters were surrounding the injured individual and attempting to render medical aid. No PBP officers or City of Pittsburgh EMTs assisted. Link to Video. As the Rulli family watched, a PBP officer threw a chemical grenade at the injured Protester and those trying to assist him.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

110.   Eventually the PBP officers advanced far enough down Centre Avenue that the Rulli family was able to exit the parking structure behind them and walk down the sidewalk on Centre Avenue toward their car, which was parked near the Target store.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

111.   As the Rulli family walked down Centre Avenue toward its intersection with  Penn Avenue, an armored vehicle full of SWAT officers stopped in the middle of the street.  The armored vehicle was followed by a City of Pittsburgh ambulance and several other  PBP vehicles.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

112.   The corner of Penn and Centre is  well over a half mile from the location  where the Protesters had gathered.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

113.   Several SWAT Officers exited the armored vehicle. Without warning, one of  these SWAT officers threw a chemical gas grenade at the Rulli family.  Link to Video.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or the video cited in support of the above allegations, and thus, the same are denied and strict proof thereof is**

demanded at trial.

114.   The grenade hit Rulli's foot and immediately began spewing gas in her face;

SWAT officers threw two more chemical gas grenades at the family.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

115.   Rulli yelled to thirteen-year-old A.F., telling him to run as she collapsed,

unable to breathe and in excruciating pain.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

116.   Bryant, who suffers from asthma, was similarly disabled by the chemical

gas the PBP officer had thrown at them.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

117.   The ambulance which followed the armored tactical vehicle did not assist

Rulli or Bryant.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

118.   A group of Protesters attempted to render aide to Rulli and Bryant.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

119.   A legal observer called 9-1-1 and requested an ambulance. She informed

the operator that Mr. Bryant suffered from asthma and had been tear gassed.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

120.    Rulli and Bryant waited for approximately a half hour. No ambulance arrived to treat them.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

121.    Bryant began searching for A.F. He asked a PBP officer if he had seen a thirteen-year-old boy without his parents. The PBP officer dismissively told him, "That's on you."

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

122.    Upon being told by his mother to run, thirteen-year-old A.F. had run to the parking lot of the Giant Eagle grocery store located near Penn Avenue and Shady Avenue.  He was disoriented from the effects of the chemical gas and his phone battery was dead, so he was unable to call Rulli or Bryant.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

123.    A group of strangers found A.F. and attempted to clean the chemicals out of his eyes. One of them lent him a phone to call Rulli and Bryant.  These strangers stayed with A.F. until Rulli and Bryant were able to get him.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as**

to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.

124.   As a direct and proximate result of PBP's actions, A.F. has become fearful of police officers.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

125.   As a direct and proximate result of PBP's actions, A.F. has become fearful of being separated from his parents.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

126.   As a direct and proximate result of the PBP's actions, A.F. has become fearful of protests.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

127.   A.F.'s fears, particularly his fear of protests, has caused the Rulli family to avoid attending protest events which they would otherwise have attended.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

128.   As a direct and proximate result of PBP's actions, Rulli, Bryant and A.F. have suffered physical and emotional injuries.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

e. _Plaintiff Simon Phillips_
**DEFENDANTS' ANSWER:**

**There are no allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

129. Plaintiff Simon Phillips participated in the protest and march which began at 3:30 at the Target store at the corner of Centre Avenue and Penn Avenue. Phillips left the protest at 5:00 pm to teach a dance class.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

130. Phillips returned to the protest at approximately 6:30 pm and marched down Centre Avenue with the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

131. Phillips did not participate in any vandalism, violence or destruction, nor did he witness any vandalism, violence or destruction before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

132. Phillips did not throw any objects at PBP officers, nor did he witness anyone else throwing objects at PBP officers before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied**

and strict proof thereof is demanded at trial.

133.   After the PBP made the first unlawful assembly announcement and before PBP officers began using force against the Protesters, Phillips left the area and tried to return to his apartment.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

134.   Phillips' apartment is over a half mile from the Corner of Centre Avenue and Negley Avenue.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

135.   When Phillips was approximately 200 yards from his apartment, an armored vehicle drove up behind him and several SWAT officers jumped out brandishing firearms.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

136.   Another line of SWAT officers approached him from the other direction, trapping him.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

137.   Two women were also trapped by the encroaching SWAT officers.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

138.   The SWAT team ordered Phillips and the women to put their hands up and

drop to the ground, which they did.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

139.   The SWAT officers bound their hands with zip ties and dragged them to the curb.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

140.   The SWAT officers would not tell them why they were being arrested.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

141.   As Phillips was being detained, PBP officers approached, tackled and forcibly arrested a woman as she complained about the arrests. The PBP officers then threw a grenade that contained either smoke or chemical gas at onlookers who questioned the officers' actions and/or attempted to videotape them. Link to Video.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the above cited video accurately describes above claims, and thus, the same are denied and strict proof thereof is demanded at trial.**

142.   An hour and a half after he was taken into custody, the officers lifted Phillips to put in him a police vehicle. There was a pool of blood on the ground where he had been sitting. The zip ties had lacerated Phillips' left wrist.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied**

and strict proof thereof is demanded at trial.

PBP officers transported Phillips to the hospital where he received multiple stitches in his left wrist. Link to Photograph. Phillips did not believe he needed stitches and requested not to get them. PBP officers told him he could not be jailed at the Allegheny County Jail without them. Phillips later received a bill from the University of  Pittsburgh Medical Center for $868.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the above photograph accurately supports the above allegations, and thus, the same are denied and strict proof thereof is demanded at trial.**

143.    PBP officers remained with Phillips while he was in the hospital and transported Phillips from the hospital to the Allegheny County Jail, where he was detained overnight.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

144.    Phillips was charged with disorderly conduct and failure to disperse.

**DEFENDANTS' ANSWER:**

**Admitted.**

145.    The officers who arrested Phillips had no probable cause to believe that he had committed the crimes of disorderly conduct or failure to disperse.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial. Answering Defendants specifically deny that any Plaintiffs alleged constitutional rights were violated.**

146.    All of the charges against Phillips were withdrawn prior to his preliminary hearing due to a lack of evidence.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

147.    As a direct and proximate result of the conduct of the PBP, Phillips suffered physical and emotional injury.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

      f.    *Plaintiff Jay Yoder*
**DEFENDANTS' ANSWER:**

**There are no allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

148.    Plaintiff Jay Yoder attended the June 1, 2020 protest to participate in the protest, document the event and assist injured Protesters as needed.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

149.    Yoder did not participate in any vandalism, violence or destruction, nor did they witness any vandalism, violence or destruction before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

150.    Yoder did not throw any objects at PBP officers, nor did they witness anyone else throwing objects at PBP officers before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Denied as stated, upon information and belief Defendant Yoder did witness projectiles being thrown at police officers.**

151.   Yoder did not leave when ordered to do so by the PBP because they believed they had a constitutionally protected right to continue to protest, as well as to document the PBP's actions and assist Protesters.

**152.   DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

153.   Soon after PBP officers began shooting and gassing the Protesters, Yoder, who was on the sidewalk, began to retreat;

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

154.   Because of a disability, Yoder was unable to move fast enough to satisfy the officers. PBP SWAT officers yelled at and pushed Yoder.  Link to Video.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video cited in support of the above allegations accurately supports the above claims, and thus, the same are denied and strict proof thereof is demanded at trial.**

155.   Chemical gas burned Yoder's eyes, nose, throat and skin.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

156.   The PBP fired munitions including rubber bullets, bean bag rounds and sponge grenades at Yoder.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as**

**to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial. It is specifically denied that any PBP officer fired "rubber bullets" at this Plaintiff.**

157.   Yoder witnessed a SWAT officer shoot a female protester in the chest with an unknown munition which Yoder believed to be a tear gas grenade from a distance of approximately 10 feet. Link to Video.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video cited in support of the above allegations accurately supports the above claims, and thus, the same are denied and strict proof thereof is demanded at trial.**

158.   After the Protesters dispersed, Yoder attempted to leave the scene but was blocked by PBP officers.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

159.   Yoder stated repeatedly to the officers, "My car is over there," and "I'm just  trying to get to my car."

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

160.   Nevertheless, PBP officers ordered Yoder to the ground, arrested and falsely charged them with failure to disperse and disorderly conduct.  Link to Video.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video cited in support of the above allegations accurately supports the above claims, and thus, the same are denied and strict proof thereof is demanded at trial. It is specifically denied that any individuals were falsely arrested or charged without probable cause. Further, Plaintiff Yoder's arrest and charges are supported by the claims and video in the instant Complaint.**

161.    PBP officers transported Yoder to Allegheny County Jail where they were detained overnight.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video cited in support of the above allegations accurately supports the above claims, and thus, the same are denied and strict proof thereof is demanded at trial.**

162.    PBP officers did not have probable cause to believe that Yoder had committed the crimes of failure to disperse or disorderly conduct.

**DEFENDANTS' ANSWER:**

**The averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied based on the video cited in the instant Complaint.**

163.    All of the charges against Yoder were withdrawn prior to their preliminary hearing.

**DEFENDANTS' ANSWER:**

**Upon information and belief, the allegations in this paragraph are admitted.**

164.    As a direct and proximate result of PBP's use of chemical gas against Yoder, Yoder is at increased risk of contracting and/or suffering complications from COVID-19.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video cited in support of the above allegations accurately supports the above claims, and thus, the same are denied and strict proof thereof is demanded at trial.**

165.    As the direct and proximate result of Defendants' actions, Yoder suffered physical injuries and emotional distress.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph or whether the video cited in support of the above allegations accurately supports the above claims, and thus, the same are denied and strict proof thereof is demanded at trial.**

g. *Plaintiff Donovan Hayden*

**DEFENDANTS' ANSWER:**

**There are no allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

166.    Plaintiff Donovan Hayden participated in the march which took place from approximately 3:30 pm to 6:30 pm and joined the smaller group of Protesters who continued marching down Centre Avenue.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

167.    Hayden did not participate in any vandalism, violence or destruction, nor did he witness any vandalism, violence or destruction before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

168.    Hayden did not throw any objects at PBP officers, nor did he witness anyone else throwing objects at PBP officers before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

169.    Hayden did not leave when ordered to do so by the PBP because he believed he had a First Amendment right to peacefully protest and the order to disperse violated the Constitution.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as**

to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.

170.   Chemical gas burned Hayden's eyes, nose, throat and skin and Hayden nearly vomited from the effects of the gas.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

171.   As a result of PBP's use of chemical gas against Hayden, Hayden is at increased risk of contracting and/or suffering complications from COVID-19.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

172.   As a result of PBP's actions, Hayden suffered physical injuries and emotional distress.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

 h.   *Plaintiff Christopher Wilson Juring*
   **DEFENDANTS' ANSWER:**

   **There are no allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

173.   Plaintiff Christopher Wilson Juring participated in the march which took place from 3:30 pm to 6:30 pm and then joined the smaller group of Protesters who marched down Centre Avenue at approximately 6:30.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

174.    Juring did not did not participate in any vandalism, violence or destruction, nor did he witness any vandalism, violence or destruction before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

175.    Juring did not throw any objects at PBP officers, nor did he witness anyone else throwing objects at PBP officers before the PBP used force against the Protesters.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

176.    Juring did not leave when ordered to do so by the PBP because he believed he had a First Amendment right to peacefully protest and the order to disperse violated the Constitution.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial. Furthermore, the averments set forth in this paragraph constitute conclusions of law to which no response is required. To the extent that the Court deems a response necessary, these averments are denied and strict proof thereof is requested at trial.**

177.    When police began to fire munitions and tear gas into the crowd, Juring ran outbound on Centre Avenue in an attempt to leave the area.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

178.    The PBP struck Juring with four rubber bullets in his lower back and the backs of his legs as he ran away.  Link to Photograph 1; Link to Photograph 2; Link to

Photograph 3.  Link to Photograph 4.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial. By way of further answer, the PBP does not use rubber bullets.**

179.    Chemical gas burned Juring's eyes, nose, throat and skin.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

180.    As a result of PBP's use of chemical gas against Juring, Juring is at increased risk of contracting and/or suffering complications from COVID-19.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

181.    As a result of PBP's actions, Juring suffered physical injuries and emotional distress.

**DEFENDANTS' ANSWER:**

**Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

   i.    *City of Pittsburgh Officials falsely accused the Protesters of misconduct and minimized the PBP's use of force*
**DEFENDANTS' ANSWER: Denied.**

182.    At 11:00 on the evening of June 1, 2020 Individual Defendants Peduto, Hissrich, Schubert, Vinansky, Lando and Doe (hereinafter "Individual Defendants") held a press conference. Link to Transcript.

**DEFENDANTS' ANSWER:**

**Admitted.**

183.        At the press conference defendants Peduto, Hissrich and Schubert praised the actions of the PBP toward the Protesters in East Liberty that evening.

**DEFENDANTS' ANSWER:**

**Admitted.**

184.        Defendant Hissrich Stated:

> And I just want to mention that the work that was done by the officers . . . tonight should be commended . . . I think we prevented businesses from being looted and possibly set afire. So I just want to commend all the public safety, the different law enforcement agencies that were out there tonight, and I think the public, they should be thanking the police officers for the work that they have done.

**DEFENDANTS' ANSWER:**

**Admitted.**

185.   Defendant Schubert stated:

> I give a lot of credit to the officers who were there because I watched them. They did an incredible job. They did an incredible job trying to keep the public safe while they were out there.

**DEFENDANTS' ANSWER:**

**Admitted.**

186.   Defendant Peduto Stated:

> . . . it was then that the officers escalated to the point of being able to break the crowd up, and that finally succeeded. What we did not see is East Liberty is not on fire tonight. People from East Liberty are not harmed. Two protestors were taken for evaluation, and they should be absolutely fine. Nine officers were hurt by protestors.

**DEFENDANTS' ANSWER:**

**The allegations in this paragraph are directed a Defendant other than the Answering Defendants, no response from the Answering is required. To the extent that the Court deems a response necessary the allegations of this paragraph are denied and strict proof thereof is demanded at trial.**

187.   In order to justify the PBP's unwarranted violence against peaceful Protesters, Individual Defendants falsely accused the Protesters of misconduct and wrongdoing. These false accusations included:

**DEFENDANTS' ANSWER:**

**Answering Defendants deny that any "unwarranted violence against peaceful**

Protestors" was employed and that they made false statements. Strict proof of these allegations is demanded at trial.

*ii.* that Protesters vandalized buildings and broke glass windows;
- **<u>DEFENDANTS' ANSWER:</u>**

- **It is denied that this was a false statement. Protesters did vandalize buildings and broke glass windows.**

*iii.* that Protesters engaged in acts of violence and destruction;
- **<u>DEFENDANTS' ANSWER:</u>**

- **It is denied that this was a false statement. Protesters did engage in acts of violence and destruction;**

*iv.* that Protesters attacked a KDKA television news crew;
- **<u>DEFENDANTS' ANSWER:</u>**

- **It is denied that this was a false statement. Protesters did threaten or attack a news crew.**

*v.* that Protesters attacked Defendant Vinansky in his police vehicle.
- **<u>DEFENDANTS' ANSWER:</u>**

- **It is denied that this was a false statement. Protesters did surround or threaten Defendant Vinansky in his police vehicle.**

*vi.* that Protesters were trying to or intended to "burn East Liberty down;"
- **<u>DEFENDANTS' ANSWER:</u>**

- **It is denied that this was a false statement. In the video provided in paragraph 76 some protestors can be heard chanting "fuck all this shit up."**

*vii.* that Protesters were "only there to cause damage and to try to hurt police officers."
- **<u>DEFENDANTS' ANSWER:</u>**

- **It is denied that this was a false statement. In the video provided in paragraph 76 some protestors can be heard chanting "fuck all this shit up."**

*viii.* that the PBP's use of force was precipitated by Protesters throwing rocks, bricks and water bottles at police officers;
- **<u>DEFENDANTS' ANSWER:</u>**

- **It is denied that this was a false statement. In various videos provided in this complaint it's clear that items are being thrown at police officers.**

*ix.* that Protesters injured nine PBP officers by throwing rocks and bricks at their heads, chests, pelvis areas, knees and shoulders;
- **<u>DEFENDANTS' ANSWER:</u>**

- **It is denied that this was a false statement. Officers were injured.**

*x.* that PBP used force against the Protesters only after the Protesters threw multiple "volleys of bricks" at officers;

- **DEFENDANTS' ANSWER:**

- **It is denied that this was a false statement.**

188. Following the protests, Individual Defendants also attempted to minimize the level of force PBP used by falsely claiming that:

**DEFENDANTS' ANSWER:**

**Denied.**

*xi.* the only force PBP used against the Protesters was "smoke;"
- **DEFENDANTS' ANSWER:**

- **It is denied that this was a false statement. The assertion is believed to be out of context in which the statement was made.**

*xii.* PBP did not use chemical gas against Protesters;
- **DEFENDANTS' ANSWER:**

- **It is denied that this was a false statement. The assertion is believed to be out of context in which the statement was made.**

*xiii.* PBP did not use, "crowd munitions" against Protesters
- **DEFENDANTS' ANSWER:**

- **It is denied that this was a false statement. The assertion is believed to be out of context in which the statement was made.**

*xiv.* PBP did not use "rubber bullets" against Protesters;
- **DEFENDANTS' ANSWER:**

- **It is denied that this was a false statement.**

*xv.* Only two protesters were injured by PBP use of force;
- **DEFENDANTS' ANSWER:**

- **It is denied that this was a false statement. The assertion is believed to be out of context in which the statement was made.**

*xvi.* no Protesters were seriously injured by PBP use of force;
- **DEFENDANTS' ANSWER:**

- **It is denied that this was a false statement. The assertion is believed to be out of context in which the statement was made.**

*xvii.* City of Pittsburgh personnel treated all injured Protesters at the scene and transported them to hospitals.
- **DEFENDANTS' ANSWER:**

- **It is denied that this was a false statement. The assertion is believed to be out of context in which the statement was made.**

j. *Defendants' prior tolerance of more threatening protestors demonstrates that Defendants did not reasonably believe Protestors posed a threat to public safety, peace or order*
**DEFENDANTS' ANSWER:**

**There are no factual allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

189.     On April 20, 2020 protesters congregated on Grant Street in

Downtown Pittsburgh to protest Governor Tom Wolf's decision to close businesses

due to the COVID-19 pandemic.

**DEFENDANTS' ANSWER:**

**Upon information and belief there was a protest on Grant Street that day alleged related to business closures due to the COVID-19 pandemic. Answering Defendants do not have information or knowledge as to the truthfulness of the reason each individual protestors allegedly attended this demonstration.**

190.     Many of the April 20 protesters openly carried tactical rifles and wore

paramilitary outfits.  A group of these protesters referred to themselves as "The Iron City

Response Guard." When asked by a reporter why they had armed themselves in this manner

for a peaceful protest, one belligerently responded, "Why not?"

**DEFENDANTS' ANSWER:**

**Upon information and belief some of the individuals at the April 20, 2020 demonstration were armed. As to the rest of the allegations in the above Answering Defendants lack the information or knowledge required to respond, and thus, the same are denied and strict proof thereof is demanded at trial.**

191.     The June 1, 2020 Protesters were not carrying tactical rifles, or any other

firearms.  The June 1, protesters were not dressed in paramilitary outfits.

**DEFENDANTS' ANSWER:**

**Denied. Some individuals in the area on June 1, 2020 were open carrying tactical rifles and there were individuals with uniform like clothing and gas masks.**

192.     The unarmed and peaceful June 1, 2020 Protesters posed less of a threat of

"substantial harm or serious inconvenience, annoyance or alarm" to the residents of the City of Pittsburgh than the heavily armed April 20 protesters.

**DEFENDANTS' ANSWER:**

**Denied. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

193.    On information and belief, the PBP did not deploy SWAT units, armored vehicles, riot police and/or snipers to the April 20 protests.

**DEFENDANTS' ANSWER:**

**Admitted to the extent that there was no property damage or large crowds in the street during the April 20, 2020, and the PBP responded appropriately to the different circumstances.**

194.    The PBP did not declare the April 20 protests to be unlawful, order the protesters to disperse and/or use force to disperse them.

**DEFENDANTS' ANSWER:**

**Admitted to the extent that there was no property damage or large crowds in the street during the April 20, 2020, and the PBP responded appropriately to the different circumstances.**

> k.    *City of Pittsburgh Officials were aware of, acquiesced in and/or failed to intervene to prevent the violation of the Protesters' rights.*
> **DEFENDANTS' ANSWER:**
> **There are no allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

195.    Individual Defendants witnessed or were otherwise aware of the events described herein as they unfolded.

**DEFENDANTS' ANSWER:**

**Admitted to the extent that Answering Defendants were aware of some events on June 1, 2020. The Answering Defendants all had different roles, Defendants Vinansky, Lando, and Schubert were in the field at different locations and Defendant Hissrich was kept apprised remotely. Answering Defendants were not apprised of any alleged constitutional injuries on June 1, 2020.**

196.    Individual Defendants were aware that the Protesters were peaceful and

were engaged in constitutionally protected speech.

**DEFENDANTS' ANSWER:**

**Denied. By way of further answer, throughout the organized demonstration there were no arrests and the demonstration was peaceful. After the organized demonstration, when the events relating to the named Plaintiffs occurred, the demonstrations were not peaceful. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

197.    Individual Defendants did not have a reasonable expectation that the Protesters would cause substantial harm or serious inconvenience, annoyance or alarm;

**DEFENDANTS' ANSWER:**

**Denied. There was property damage and individuals were put in personal danger after the organized protest which was after approximately 6:30p.m. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

198.    Individual defendants did not have reason to believe that the Protesters presented an imminent threat to public safety, peace or order;

**DEFENDANTS' ANSWER:**

**Denied. By way of further answer see Answering Defendants response to paragraph 199. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

199.    Individual Defendants ordered, authorized and/or acquiesced in the order to declare the assembly unlawful;

**DEFENDANTS' ANSWER:**

**Denied. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

200.    Individual Defendants ordered, authorized and/or acquiesced in the use of excessive force against Protesters;

**DEFENDANTS' ANSWER:**

**Denied. The legal conclusions in this paragraph do not require a response, to the**

extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.

201.    Individual Defendants had the opportunity to intervene to prevent the violation of the Protesters' constitutionally protected rights and failed or refused to do so;

**DEFENDANTS' ANSWER:**

**Denied.**

   I.   *The decision to use force constituted the official policy of the City of Pittsburgh*
   **DEFENDANTS' ANSWER:**

   **There are no allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

202.    Defendants Peduto, Hissrich and Schubert, jointly and/or individually, possessed final policymaking authority to make the decision to 1) declare Protesters' assembly unlawful, 2) use force to disperse Protesters and 3) use noxious chemical gas and extremely dangerous and painful rubber bullets, beanbag rounds and/or sponge grenades against Protesters.

**DEFENDANTS' ANSWER:**

**Denied by Answering Defendants. Further, the legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

203.    Peduto, Hissrich and Schubert jointly and/or individually made, approved and/or acquiesced in these decisions to violate Protesters' constitutional rights.

**DEFENDANTS' ANSWER:**

**Denied by Answering Defendants. Further, the legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

204.    The violation of Protesters' rights was the direct result of the official policy of the City of Pittsburgh.

**DEFENDANTS' ANSWER:**

**Denied by Answering Defendants. Further, the legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

    m. *PBP violated its policy regarding discharge of less lethal munitions*

**DEFENDANTS' ANSWER:**

**There are no factual allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

205.    PBP's policy regarding discharge of less lethal munitions does not provide for the use of rubber bullets or sponge grenades. Nevertheless, PBP officers shot Protesters with rubber bullets and sponge grenades.

**DEFENDANTS' ANSWER:**

**Denied. It is further denied that PBP officers used Rubber Bullets.**

206.    PBP's Policy regarding discharge of less lethal munitions does not permit discharge from less than 20 feet.  Nevertheless, officers discharged rubber bullets, beanbags and/or sponge grenades at Protesters from a distance of far less than 20 feet.

**DEFENDANTS' ANSWER:**

**Denied.**

207.    PBP policy recognizes that, "The use of kinetic energy impact projectiles are considered deadly force, if intentionally deployed to areas of the subjects [sic] body that are recognized as likely to cause serious bodily injury or death (head, neck, throat, chest or solar plexus)." PBP policy prohibits officers from targeting these areas of a person's body unless deadly force is justified.  Nevertheless, PBP officers fired hundreds of rubber bullets, beanbags and/or sponge grenades indiscriminately into clouds of smoke, through which they could not see the Protesters' bodies. As a result, Protesters  were hit with projectiles in areas of their bodies likely to cause serious bodily injury and  were, in

fact, seriously injured.

**DEFENDANTS' ANSWER:**

**The allegations in this paragraph are admitted to the extent that there is a quote from a PBP policy. As to the remaining allegations Answering Defendants are without information or knowledge to form an opinion as to the truthfulness of the allegations in this paragraph, and thus, the same are denied and strict proof thereof is demanded at trial.**

208.    PBP policy requires officers to transport persons subject to kinetic energy impact projectiles to a medical facility for evaluation and treatment.  PBP did not transport Protesters injured by rubber bullets and bean bags to medical facilities, or render any medical aid whatsoever, even though an ambulance accompanied police vehicles. PBP did not pre-arrange for medical care or transportation for injured Protesters, even though  it intended to use levels of force which were likely to cause serious injury or death to Protesters.

**DEFENDANTS' ANSWER:**

**Denied as stated. By way of further answer, the City of Pittsburgh has appropriate and constitutional policies on kinetic energy impact projectiles and has policies regarding aid when such items are used. The remaining allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

209.    PBP's failure to follow its own policy regarding discharge of less lethal munitions constituted deliberate indifference to the rights of Plaintiffs.

**DEFENDANTS' ANSWER:**

**Denied. Further, the legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

       *n. PBP failed to adopt necessary policies and procedures regarding crowd control*
       **DEFENDANTS' ANSWER:**

       **There are no factual allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further**

response necessary the same is denied and strict proof thereof is demanded at trial.

210.    The PBP does not have a policy governing the declaration of assemblies as "unlawful" and the forced dispersal of protests, even though the need for such a policy is obvious.

**DEFENDANTS' ANSWER:**

**Denied as stated. The PBP has appropriate policies regarding the policing of large demonstrations that could become unlawful. Further, the legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

211.    The PBP does not have a policy governing the use of chemical gas, flashbang grenades and/or smoke bombs even though the need for such a policy is obvious.

**DEFENDANTS' ANSWER:**

**Denied. Further, the legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

212.    PBP's failure to adopt these policies constituted deliberate indifference to the constitutional rights of Plaintiffs and other peaceful Protesters with whom PBP officers come into contact.

**DEFENDANTS' ANSWER:**

**Denied. Further, the legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

    o.  *PBP's failed to properly train officers regarding crowd control*
        **DEFENDANTS' ANSWER:**

        **There are no factual allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial. The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a further response necessary the same is denied and strict proof thereof is demanded at trial.**

213.    PBP's use of force training curriculum does not address, or does not properly address, crowd/riot control techniques, use of impact munitions, chemical gas, flashbang grenades and/or smoke bombs.

**DEFENDANTS' ANSWER:**

**Denied as stated. Upon information and belief, PBP officers are trained in use of less lethal munitions and techniques in line with national standards.**

214.    PBP does not train, or does not properly train, officers in crowd/riot control techniques;

**DEFENDANTS' ANSWER:**

**Denied as stated. Upon information and belief, PBP officers are trained in use of crowd control techniques in line with national standards.**

215.    PBP does not train, or does not properly train, officers in the use of munitions such as rubber bullets, bean bag rounds and/or sponge grenades.

**DEFENDANTS' ANSWER:**

**Denied as stated. Upon information and belief, PBP officers are trained in use of less lethal munitions and techniques in line with national standards. The PBP does not use rubber bullets.**

216.    PBP does not train, or does not properly train, officers in the use of chemicals, such as "tear gas" and/or OC spray for crowd control purposes.

**DEFENDANTS' ANSWER:**

**Denied as stated. Upon information and belief, PBP officers are trained in use of crowd control techniques in line with national standards.**

217.    PBP does not train, or does not properly train, officers in the use of flashbang devices and/or smoke bombs for crowd control purposes.

**DEFENDANTS' ANSWER:**

**Denied as stated. Upon information and belief, PBP officers are trained in use of crowd control techniques in line with national standards.**

218.    PBP's failure to train its officers, as hereinbefore described, constituted deliberate indifference to the rights of Plaintiffs and other peaceful protesters with whom PBP officers come into contact.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

      V)    <u>CLASS ALLEGATIONS</u>
              **<u>DEFENDANTS' ANSWER:</u>**

**There are no factual allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

219.    Plaintiffs bring this action as a class action pursuant to Rule 26 of the Federal Rules of Civil Procedure;

**<u>DEFENDANTS' ANSWER:</u>**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

220.    Plaintiffs seek to represent a primary class and two subclasses.
              **<u>DEFENDANTS' ANSWER:</u>**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

221.    The proposed primary class consists of the following:

> Every individual who was present at or near the intersection of Centre Avenue and Negley Avenue in the City of Pittsburgh on June 1, 2020 for the purpose of engaging in lawful protest and who was ordered to disperse by the City of Pittsburgh Bureau of Police.

**<u>DEFENDANTS' ANSWER:</u>**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

222.    The first proposed subclass (Subclass A) consists of the following:

> Every member of the primary class who was subjected to force by City of Pittsburgh Bureau of Police Officers, or law enforcement officers acting under the direction of the City of Pittsburgh Bureau of Police.

**<u>DEFENDANTS' ANSWER:</u>**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

223.   The second proposed subclass (Subclass B) consists of the following:

> Every member of the primary class who was arrested and/or who was criminally charged with disorderly conduct and/or failure to disperse by City of Pittsburgh Bureau of Police officers or other officers acting under the direction of the City of Pittsburgh Bureau of Police.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

224.   The requirements of Fed. R. Civ. Pro. 23(a)(1) are satisfied with regard to classes and subclasses in that Plaintiff estimates that there are at least 100 class members in the primary class and subclass A, and at least 22 class members of subclass B, whose interests would be affected by any order of declaratory or injunctive relief. The number of class members is so large that joinder of all its members is impracticable.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

225.   The requirements of Fed. R. Civ. Pro. 23(a)(2) are satisfied in that there are questions of law and fact common to the classes, including but not limited to:

**DEFENDANTS' ANSWER:**

**The legal conclusions in Paragraph 26 and its subparagraphs xvii-xxii do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

> *xviii.*   Whether the Defendants violated the First Amendment to the United States Constitution when they declared the Protesters peaceful assembly "unlawful" and ordered Protesters to disperse?
>
> *xix.*   Whether the Defendants violated the First Amendment to the United States Constitution when they used force to disperse Protesters who were peaceably assembled?

*xx.* Whether the Defendants violated the Fourth Amendment to the United States Constitution when they used force to disperse Protesters who were peaceably assembled?

*xxi.* Whether the Defendants violated the Fourth and/or Fourteenth Amendment to the United States Constitution by using unnecessary and excessive force to disperse Protesters who were peaceably assembled?

*xxii.* Whether the Defendants violated the Fourth and/or 14th Amendments to the United States Constitution by failing to adequately train, supervise, regulate PBP officers, including failure to promulgate necessary policies, in responding to individuals exercising constitutionally protected rights to protest and/or assemble.

226. The requirements of Fed. R. Civ. Pro. 23(a)(3) are satisfied in that Plaintiffs' claims are typical of the claims of the class. Plaintiff and all class members are seeking injunctive relief and damages under federal law. Any finding that that Defendants' conduct violated Plaintiffs' rights will be applicable to all class members.

## DEFENDANTS' ANSWER:

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

227. The requirements of Fed. R. Civ. Pro. 23(a)(4) are satisfied in that Plaintiffs' attorneys, Margaret S. Coleman, Esq., and the Law Offices of Timothy P. O'Brien, and Quinn Cozzens and the Abolitionist Law Center will fairly and adequately represent the interests of the class in that: (i) they have done significant work in identifying and investigating potential claims prior to filing this action; (ii) they and their respective firms have extensive experience litigating class actions, other complex litigation and the types of claims asserted in the Class Action Complaint; (iii) they have extensive knowledge of the applicable law; and (iv) they are advancing the costs of the litigation.

## DEFENDANTS' ANSWER:

**The legal conclusions in this paragraph do not require a response, to the extent that**

this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.

228.   The requirements of Fed. R. Civ. Pro. 23(b)(1) are satisfied in that prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and/or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

229.   The requirements of Fed. R. Civ. Pro. 23(b)(2) are satisfied in that the parties opposing the class have acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

VI)   CLAIMS
**DEFENDANTS' ANSWER:**

**There are no allegations in this paragraph and thus no response is required. To the extent that this Court deems a response is required the allegations in this paragraph are denied and strict proof thereof is demanded at trial.**

COUNT I

Named Plaintiffs and Primary Class Members v. Individual Defendants

Violation of the First Amendment of the United States Constitution

230.   Defendants' actions, as outlined above, violated Plaintiffs' and Primary

Class Members First Amendment Rights to freedom of speech, freedom to peaceably assemble and freedom to petition the government for redress of grievances.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

231.    Defendants' actions, as outlined above, were not reasonable regulations of the time, place or manner of Plaintiffs' speech.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

232.    Defendants' actions, as outlined above had the purpose and effect of suppressing Plaintiffs' speech and dissuading Plaintiffs and others from engaging in future activities protected by the First Amendment;

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

233.    Defendants' actions, as outlined above, would reasonably be expected to deter a reasonable person from exercising their First Amendment rights.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

234.    As a direct and proximate result of Defendants' conduct, as outlined above, Plaintiffs and Primary Class Members suffered physical injury and/or emotional and psychological pain and suffering.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is**

demanded at trial.

<u>COUNT II</u>
<u>Named Plaintiffs and Subclass A Members v. Individual
Defendants</u>

<u>Violation of the Fourth Amendment to the United States Constitution</u>

<u>Excessive Force</u>

235.     Defendants' actions, as outlined above, violated Plaintiffs' and Subclass A

Members' Fourth Amendment right to be free from the use of excessive force.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that
this Court deems a response necessary the same is denied and strict proof thereof is
demanded at trial.**

236.     As a direct and proximate result of Defendants' conduct, as outlined above,

Plaintiffs and Primary Class Members suffered physical injury and/or emotional and

psychological pain and suffering.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that
this Court deems a response necessary the same is denied and strict proof thereof is
demanded at trial.**

<u>COUNT
III</u>

<u>Phillips, Yoder and Subclass B Members v. Individual Defendants</u>

<u>Violation of the Fourth Amendment to the United States Constitution</u>

<u>Unlawful Arrest</u>

237.     Defendants' actions, as outlined above subjected Phillips, Yoder and

Subclass B Members to an unreasonable seizure in violation of the Fourth Amendment to

the United States Constitution.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that
this Court deems a response necessary the same is denied and strict proof thereof is
demanded at trial.**

238.     As a direct and proximate result of Defendants' conduct, as outlined above,

Phillips, Yoder and Subclass B Members suffered physical injury and/or emotional and psychological pain and suffering.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

COUNT IV

Phillips, Yoder and Subclass B Members v. Individual Defendants

Violation of the First Amendment to the United States Constitution

Retaliatory Prosecution

239.     Defendants' actions, as outlined above subjected Phillips and Yoder and Subclass B members to malicious prosecution in retaliation for engaging in Constitutionally protected speech in violation of the First Amendment to the United States Constitution.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

240.     As a direct and proximate result of Defendants' conduct, as outlined above, Phillips, Yoder and Subclass B Members suffered physical injury and/or emotional and psychological pain and suffering.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

COUNT
V

Named Plaintiffs and Primary Class Members v. City of Pittsburgh

Violation of the First and/or Fourteenth Amendment to the United States Constitution

241.     Defendant City of Pittsburgh's conduct, as hereinbefore described, was the

direct and proximate cause of violations of Plaintiffs' First Amendment Rights to freedom of speech and freedom to peaceably assemble.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

242. As a direct and proximate result of Defendant's conduct, as outlined above, Plaintiffs and Primary Class Members suffered physical injury and/or emotional and psychological pain and suffering.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

COUNT
VI

Named Plaintiffs and Subclass A Members v. City of Pittsburgh

Violation of the Fourth and/or Fourteenth Amendment to the United States Constitution

Excessive
Force

243. Defendant City of Pittsburgh's conduct, as hereinbefore described, was the direct and proximate cause of violations Plaintiffs' and Subclass A Members' Fourth Amendment Rights to freedom from excessive force.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

244. As a direct and proximate result of Defendant's conduct, as outlined above, Plaintiffs and Subclass A Members suffered physical injury and/or emotional and psychological pain and suffering.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

COUNT
VII

Named Plaintiffs and Subclass A Members v. City of Pittsburgh

Violation of the Fourth and/or Fourteenth Amendment to the United States Constitution

Unlawful Arrest

246.    Defendant City of Pittsburgh's conduct, as hereinbefore described, was the direct and proximate cause of violations Plaintiffs' and Subclass B Members' Fourth Amendment Rights to freedom from false arrest and malicious prosecution.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

247.    As a direct and proximate result of Defendants' conduct, as outlined above, Plaintiffs and Subclass B Members suffered physical injury and/or emotional and psychological pain and suffering.

**DEFENDANTS' ANSWER:**

**The legal conclusions in this paragraph do not require a response, to the extent that this Court deems a response necessary the same is denied and strict proof thereof is demanded at trial.**

VII)    REQUEST FOR RELIEF
**DEFENDANTS' ANSWER:**
**Paragraphs VII and Subparagraphs VII (a)-(g)(inclusive of their subparagraphs) contain Plaintiffs' request for relief and, as such, requires no response. To the extent a response is required, those allegations are specifically denied. Both Defendants deny further that Plaintiff is entitled, either legally or factually, to any of the relief sought in Plaintiff's Complaint. Defendants deny any and all allegations of fact not expressly admitted in this Answer.**

**THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK**

## FIRST AFFRIMATIVE DEFENSE

At all times relevant, Defendants acted with and pursuant to a bonafide good faith belief that their actions were lawful, privileged, and in keep with his proper duties as employees of a municipality.

## SECOND AFFRIMATIVE DEFENSE

Each Answering Defendant asserts that he is individually entitled to qualified immunity as articulated in *Harlow v. Fitzgerald,* 457 U.S. 800 (1982) and subsequent decisions. At no time did any individual Answering Defendant violate clearly established law and at all times concerned with this litigation each individual Defendant acted in a manner which was proper, reasonable, lawful and in the exercise of good faith and, as such, enjoys not only qualified immunity, but a right not to go to trial as articulated in *Mitchell v. Forsythe*, 472 U.S. 511, 572 (1985).

## THIRD AFFRIMATIVE DEFENSE

The Court lacks subject-matter jurisdiction.

## FOURTH AFFRIMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

## FIFTH AFFRIMATIVE DEFENSE

Plaintiff is not entitled to punitive damages.

## SIXTH AFFRIMATIVE DEFENSE

Plaintiffs' own actions were the direct and proximate cause of the alleged injuries and/or damages.

## SEVENTH AFFRIMATIVE DEFENSE

Because Plaintiff cannot establish that a constitutional violation has been committed by any municipal employee, any claim of municipal liability is barred.

## EIGHTH AFFRIMATIVE DEFENSE

Plaintiffs' have not established classes pursuant to the Federal Rules of Civil Procedure.

## NINTH AFFRIMATIVE DEFENSE

Plaintiffs' own actions and/or failure to act and/or criminal actions were the direct and proximate cause of the alleged injuries and damages.

## TENTH AFFRIMATIVE DEFENSE

Defendants assert that the Political Subdivision Tort Claims Act serves as a bar to Plaintiffs claims and assert all defenses, immunities, and limitations of damages available to them under the Political Subdivision Tort Claims Act. See 42 Pa. C.S.A. § 8541.

## ELEVENTH AFFRIMATIVE DEFENSE

Answering Defendants assert herein all defenses available to them under the Civil Rights Act of 1871.

## TWELFTH AFFRIMATIVE DEFENSE

The City of Pittsburgh has constitutional custom, policies, and procedures, if any, and all of its employees have undergone training in line with constitutional requirements.

* * * *

WHEREFORE, Defendants respectfully request that Plaintiffs Complaint be dismissed with prejudice, that judgment be entered in its favor, that it be awarded attorneys' fees and costs, and such other and further relief as the Court deems appropriate in this action.

**JURY TRIAL DEMANDED**

Respectfully Submitted:

Respectfully submitted,
*/s/ Julie E. Koren*
Associate City Solicitor
Pa. I.D. #309642

*/s/ Michael E. Kennedy*
Michael E. Kennedy
Associate City Solicitor
Pa. I.D. #52780

/s/ Yvonne S. Hilton
Solicitor
City of Pittsburgh

City of Pittsburgh Department of Law
Firm #046
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
(412) 255-2032
Julie.Koren@pittsburghpa.gov